SMITH, Appellant,

v.

COLLINS, Appellee.

[Cite as *Smith v. Collins* (1995), 107 Ohio App.3d 100.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16802.

Decided April 5, 1995.

*John D. Frisby,* for appellant.

*Donald E. Lombardi,* for appellee.

REECE, Judge.

Appellant, Tracy L. Smith, appeals the trial court's order modifying the child support obligation of the appellee, John C. Collins. We reverse.

Tracy and John married in 1984. Two children were born during the marriage. On November 22, 1989, Tracy and John petitioned the court for a dissolution of their marriage. The petition included a separation agreement which addressed custody and child support. Under the agreement, Tracy retained custody of the two minor children, subject to reasonable visitation by John, and John agreed to pay $1,200 each month in child support ($600 per child).

The parties' petition for dissolution was heard by a referee who found that each party had voluntarily entered into the separation agreement and that each party was satisfied with its terms. The referee further found that the separation agreement was fair, just, and equitable and recommended that a dissolution be granted incorporating the terms of the agreement. Neither party objected to the referee's report and recommendation. On March 7, 1990, the trial court adopted the referee's report and recommendation and dissolved the parties' marriage. The court incorporated the parties' separation agreement, as written, into the decree of dissolution and made the agreement an order of the court.

On April 12, 1990, five weeks after the parties' dissolution, the state legislature enacted R.C. 3113.215. The statute established a mandatory schedule for the calculation of child support and set procedures for the modification of an existing child support order. At issue in this appeal are the modification provisions found in R.C. 3113.215(B)(4).[1]

---

1. Although a former version of R.C. 3113.215 was in effect when John's motion to modify was heard (Am.Sub.S.B. No. 115, effective October 12, 1993), we apply the current version of R.C. 3113.215 (Am.S.B. No. 355, effective December 9, 1994) since the legislature's minor revisions have not substantively changed subsection (B)(4). See *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 141, 601 N.E.2d 496, 497, fn. 1.

Under R.C. 3113.215(B)(4), if a party to a child support order moves for a modification, the court must recalculate the statutory support amount using the current support schedule and the parties' updated financial information. This recalculated amount is then compared to the amount that is actually being paid under the existing child support order. If the recalculated amount deviates from the existing order by more than ten percent, then that deviation "shall be considered by the court as a change of circumstance that is substantial enough to require a modification of the amount of the [existing] child support order." This provision has become known as the ten percent rule.

Based on the statutory support schedule and the ten percent rule, John twice moved to modify his child support obligation. John first moved to modify on September 19, 1991. The parties resolved that motion on June 3, 1992, through an agreed journal entry in which John agreed to pay $1,200 per month in child support as originally set forth in the separation agreement. John next moved to modify on December 20, 1993. The trial court held an evidentiary hearing on that motion on March 24, 1994. After the hearing, the court reduced John's support obligation from $1,200 per month, as contained in the agreed journal entry, to $794.78 per month, as calculated under the statutory support schedule. In their briefs, the parties agree that in reducing John's support obligation, the trial court relied on the ten percent rule found in R.C. 3113.215(B)(4). Tracy appeals, raising two assignments of error.

I

In her first assignment of error, Tracy argues that the trial court erred by not completing a child support computation worksheet and including that worksheet in the record. The Ohio Supreme Court has explicitly held that "[a] child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record." *Marker v. Grimm* (1992), 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph one of the syllabus. On the authority of *Marker*, this court has held that the failure to complete the worksheet and include it in the record constitutes reversible error. *McClain v. McClain* (1993), 87 Ohio App.3d 856, 858, 623 N.E.2d 242, 243–244.

A completed child support computation worksheet was not included in the trial court's record of this case. As a result, the trial court committed reversible error, and the case must be remanded for completion of the worksheet. The first assignment of error is sustained.

## II

In her second assignment of error, Tracy challenges the trial court's reliance on the "ten percent" rule in reducing John's support obligation. Tracy asserts that in the separation agreement and the agreed journal entry, John voluntarily undertook a child support obligation that exceeded the statutory support schedule by more than ten percent. Since John voluntarily agreed to have his support obligation exceed the support schedule by more than ten percent, Tracy argues that the ten percent rule has no application in this case. Instead, Tracy contends that John is entitled to a modification of his child support obligation only if he can show a substantial change in circumstances beyond the statutory ten percent deviation.

### (A)

The ten percent rule has not been applied consistently by Ohio's appellate districts in cases where the parties' existing child support order is contained in a separation agreement adopted by the trial court. Compare *Kermani v. Kermani* (Feb. 11, 1994), Trumbull App. No. 93–T–4920, unreported, 1994 WL 45279; *Tovar v. Tovar* (Nov. 10, 1993), Cuyahoga App. No. 63933, unreported, 1993 WL 462869, with *Monti v. Monti* (June 1, 1993), Fairfield App. No. CA–47–92, unreported, 1993 WL 218331; *Plymale v. Plymale* (June 11, 1992), Jackson App. No. 681, unreported, 1992 WL 142360. In this case, however, the existing child support order is not contained in the parties' separation agreement. Rather, the existing child support order is found in the June 3, 1992 agreed journal entry. This factual difference distinguishes this case from the foregoing cases and requires the application of a different standard of review.

In his first motion to reduce his child support obligation, John specifically requested the court to "set [his obligation] within the support guidelines." John was obviously aware of the statutory support schedule when he filed his first motion to modify, and he was free to argue that his support obligation, as set forth in the separation agreement, should be reduced based on the modification provisions in subsection (B)(4). However, instead of making such an argument in favor of modification, John entered into the agreed journal entry. In that entry, John agreed to pay the support obligation set forth in the separation agreement, even though that obligation clearly exceeded the statutory support schedule by more than ten percent.

The child support statute does not contain any language prohibiting a party from voluntarily undertaking a child support obligation in an amount greater than the statutory level. Moreover, if a party voluntarily undertakes a child support

obligation in an amount greater than the statutory level, it can be reasonably presumed that the increased obligation would inure to the best interest of the parties' children.

The only evidence in the record indicates that John, with full knowledge of the support schedule, voluntarily undertook a child support obligation in an amount greater than the statutory level. Nothing in the record suggests that this support obligation was unjust or inappropriate, or contrary to the best interest of the children. Under these circumstances, it was within the trial court's discretion to adopt the agreed journal entry as the child support order of the court even though that order deviated from the statutory support schedule by more than ten percent.

In *Marker,* the Supreme Court cautioned that "any court-ordered deviation from the applicable worksheet and the basic child support schedule must be entered by the court in its journal and must include findings of fact to support such determination." 65 Ohio St.3d at 143, 601 N.E.2d at 499. It is clear that the trial court failed to follow this mandate in adopting the parties' agreed journal entry. Any error in the trial court's adoption of the agreed entry, however, has been waived because neither party timely appealed that order. Nevertheless, this opinion should not be read as an endorsement of the procedures followed by the trial court. Rather, a trial court must include findings of fact in *every* child support order that deviates from the support schedule, even if the child support order is contained in a separation agreement or agreed journal entry adopted by the court. In this case, though, since neither party timely appealed the agreed entry, that entry must be accepted as the existing child support order of the court. See *Saunders v. Saunders* (Mar. 8, 1995), Lorain App. No. 94CA005855, unreported, at 3–4, 1995 WL 98956.

### (B)

The remaining question then is whether the trial court erred by reducing John's child support obligation solely upon the finding of a ten percent deviation from the support schedule. Although "the terms of R.C. 3113.215 are mandatory in nature and must be followed literally and technically in all material respects," *Marker,* 65 Ohio St.3d at 143, 601 N.E.2d at 499, it is presumed that in enacting any statute the legislature intended a just and reasonable result. R.C. 1.47(C). Given that John voluntarily agreed to a child support obligation that exceeded the support schedule by more than ten percent, it would not be just or reasonable to reduce that obligation solely upon the finding of a ten percent deviation from the

support schedule, because that deviation was already contemplated and accepted by the parties. Therefore, this court holds that when a party voluntarily agrees to a child support obligation which *exceeds* the statutory support schedule by more than ten percent, that party must show a substantial change of circumstances beyond the statutory ten percent deviation before the trial court may modify the support obligation. The second assignment of error is sustained to the extent that it is consistent with this holding.

On remand, the trial court is instructed to complete a child support computation worksheet and to include the worksheet in the record. At that time, John may still argue that he is entitled to a reduction in his child support obligation. However, John may not rely solely on the ten percent rule to support his argument. Rather, he must show a substantial change of circumstances beyond the statutory ten percent deviation in order for the trial court to modify his current support obligation.

### III

The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this decision.

*Judgment reversed*
*and cause remanded.*

BAIRD, P.J., concurs in Part I, Part II(B), and Part III.

QUILLIN, J., concurs in Part I and the judgment.